## GRIFFIN v. TRAVELERS INS. CO.

### No. 9774.

Circuit Court of Appeals, Ninth Circuit.

Aug. 28, 1941.

Philip R. McEnerney and J. Bruce Fratis, both of San Francisco, Cal., for appellant.

Joseph T. O'Connor, Leo R. Friedman, and O'Connor, Neubarth & Moran, all of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Plaintiff-appellant, a resident of the State of California, is the beneficiary under three insurance policies issued by the defendant-appellee [a Connecticut corporation] on the life of Roscoe W. Griffin, now deceased. The insurance company had declared the policies lapsed prior to the death of the insured, and defends the action to recover on the policies on that ground.

The policies with which we are here concerned are: No. 961783, in the amount of $25,000; No. 1659085, in the amount of $5,000; and No. 1659057, in the amount of $5,000. For convenience herein we shall refer to the policies as "first", "second" and "third" policy respectively.

The status of the three policies on January 1, 1939, was as follows:

The first policy was in its eleventh insurance year, said eleventh year having started on November 15, 1938. The premiums on the policy were payable monthly on the 15th day of each month in the sum of $51.50, and were fully paid to date. No loans were outstanding.

The second and third policies were in their seventh insurance years, said seventh year having started on January 19, 1938. These policies called for quarterly payments of premiums of $32.70 each on the 19th day of January, April, July and October. There was an outstanding loan against each of these policies in the sum of $401.27, which had been contracted in the month of December, 1938. Premiums were paid to January 19, 1939.

Each of the three policies contained the following provision: "After three full years' premiums shall have been paid * * * on demand in writing to the Home Office of the Company, the Insured may borrow at any time during the year on the sole security of this contract *an amount not exceeding the cash value at the end of the current insurance year* as specified in the table of cash values hereinafter set forth, provided: interest in advance at the rate of five and one-half percentum per annum shall be payable and

the initial interest shall be deducted from the loan; the contract shall be assigned to the Company by all of the parties in interest thereunder; *the premiums shall be fully paid to the end of the current insurance year, or if not already so paid shall be deducted in the adjustment of the loan;* the amount available at any time shall include any previous loan then unpaid. * * * If the total indebtedness shall equal or exceed the cash value at the time of failure to repay any such loan or to pay interest when due, such failure shall render this contract null and void at the expiration of one month after due notice shall have been mailed by the Company to the last known address of the person to whom the loan shall have been made and of the Insured, or assignee, if any." [Italics supplied.]

The table of cash and loan values in the first policy is as follows:

"The Cash and Loan Values * * * Available in Any Year Will Be 25 Times the Amount Stated in the Following Table: * * *

| "10 Years | $152.24 |
| "11 Years | 171.44 |
| "12 Years | 191.34". |

The table of cash and loan values in the second and third policies is as follows:

"The Cash and Loan Values * * * Available in Any Year Will Be 5 Times the Amount Stated in the Following Table: * * *

| "6 Years | . $ 94.04 |
| "7 Years | 112.35 |
| "8 Years | 131.40". |

It is thus apparent that as to the first policy, during the eleventh insurance year [from November 15, 1938 to November 15, 1939] the maximum cash and loan value was $4,286 [25 times $171.44].

As to the second and third policies, the maximum cash and loan value of each policy during the seventh insurance year [from January 19, 1938 to January 19, 1939] was $561.75 [5 times $112.35]; and during the eighth insurance year [from January 19, 1939 to January 19, 1940] the maximum cash and loan value of each policy was $657 [5 times $131.40].

On January 20, 1939, the insured procured a loan of $1,200 on the first policy and received from the company a check in the net amount of $1,041.76. The difference, amounting to $158.24, was de-

ducted by the company and applied as follows: $4.71 as interest on the loan to February 15, 1939; $25.59 applied to the payment of the January monthly premium and interest due on a fourth policy of insurance [which policy is not involved in this action]; $38.22 applied in payment of the quarterly premium and interest on the old loan on the third policy of insurance; and the sum of $51.50 as payment of premium on the first policy of insurance to February 15, 1939.

In other words, instead of deducting from the proceeds of the loan sufficient to pay the premiums on the policy to the end of the current insurance year, as provided in the policy, the company deducted interest and premiums to February 15, 1939, when the next premium payment would become due under the policy.

On February 23, 1939, the insured procured an additional loan on the first policy of $1,500 and received a check in the net amount of $1,323.30. The difference of $176.70 was deducted and applied by the company as follows: $22.52 as interest on the loans against the policy to April 15, 1939; $51.18 applied to the payment of premiums and interest due on the fourth policy with which we are not here concerned; and $103 as payment of two months' premiums on the first policy of insurance, to April 15, 1939.

So, here again, instead of deducting from the proceeds of the loan sufficient to pay the premiums on the policy to the end of the current insurance year, premiums were deducted only to April 15, 1939.

On April 1, 1939, the insured procured an additional loan of $1,000 on the first policy, from which was deducted the sum of $2.11 as interest to April 15, 1939. The insured received a check for the difference of $997.89.

On May 2, 1939, the insured applied for an additional loan of $200 on the first policy and received a net sum of $61.75. The balance of $138.25 was applied by the company as follows: $35.25 interest to June 15, 1939 and $103 in payment of two months' premiums on the first policy to June 15, 1939.

On June 13, 1939, the insured procured another loan of $226 on the first policy. No premiums were deducted from the proceeds of this loan. Interest to June 15, 1939, in the amount of $1.09 was deducted, leaving $224.91 which was received by the insured.

Thus on June 15, 1939, there were outstanding on the first policy loans totaling $4,126. Interest on these loans and the premium on the policy were paid to June 15, 1939. It will be remembered that as of the end of the insurance year [November 15, 1939] the loan value of the policy was $4,286.

Turning now, to the second and third policies, on January 1, 1939, there was an outstanding loan against each of these policies in the sum of $401.27. Interest on these loans and the premiums on the policies were paid to January 19, 1939.

On May 20, 1939, the insured procured a loan of $125 on the second policy and a like loan of $125 on the third policy. At this time the premiums on these two policies had been paid to July 19, 1939, so no deductions were made from the $250 for this purpose. There was a deduction of a sufficient sum to pay the premium on the first policy from June 15, 1939, to July 15, 1939.

On June 13, 1939, the insured procured loans of $83.13 each on the second and third policies. No premiums were deducted from these loans, but interest was deducted to July 19, 1939. This brought the total loans on these two policies to $609.40 each. It will be recalled that the loan value of each of these policies as of the end of the insurance year was $657.

On August 21, 1939, the insurance company mailed notice to the insured that the second and third policies had lapsed by reason of the failure of the insured to pay the premium and loan interest due on July 19, 1939, and the grace period provided in the policy having expired. A similar notice was mailed to the insured as to the first policy, on September 18, 1939. This notice referred to the loan interest and premium due on July 15, 1939.

The insured died on November 10, 1939, after the policies had been declared lapsed by the company, but within the current insurance year. The beneficiary sued on the policies, and the District Court denied recovery, holding that the policies had lapsed prior to the death of the insured.

Plaintiff's main arguments in her effort to obtain a reversal of the decision of the District Court are as follows:

First, the failure of the company to comply with the express provisions of the policy to the effect that premiums to the end of the current insurance year should be deducted from the proceeds of any loan, constitutes a waiver on the part of the com-

398

pany to collect those premiums, or to declare a forfeiture for their nonpayment during the current insurance year.

Second, the provisions of the policy to the effect that the insured might borrow at any time during the year an amount not exceeding the cash value at the end of the current insurance year, are separate and distinct from the provisions of the policy requiring the payment of premiums; therefore the company's failure to deduct the premium out of the proceeds of the loan does not affect the cash value available for loan purposes.

In this connection the appellant relies upon a provision in each of the policies reading, so far as here applicable, as follows: "If there shall be an indebtedness to the Company, and if any premium shall not be paid on or before the date when due, an amount of insurance, equal to the face amount of this contract less the indebtedness, will automatically continue from said due date as term insurance, for the term, including the period of grace, which the excess of the cash value of the contract, if any, over the indebtedness will purchase at the then age of the Insured, at the single premium rates according to the American Experience Table of Mortality, with 3½ percentum interest. * * *"

Appellant's point is that the insured was entitled to borrow up to the full cash value at the end of the current year, regardless of whether or not premiums were paid to the end of the year; that the insured did not borrow up to this full value, and that there was therefore a surplus available for term insurance under the provision above quoted; that had the surplus been applied to the purchase of term insurance, the policies would have been in effect at the date of the insured's death.

Appellant also raises questions as to whether certain evidence admitted by the trial court violated the parol evidence rule. We shall consider the assignments of error in the order in which they are raised by the appellant in her briefs.

Her first point is entitled "The provision in the policy imposed a mandatory duty upon the company to deduct premiums for the current insurance year". With this point she discusses her second point, entitled "The provision for the company to deduct premiums for the remainder of the insurance year is a warranty".

We are of the opinion and hold in this connection that the provision of the policy relating to payment of premiums up to the end of the current insurance year out of the proceeds of any loan are primarily for the benefit of the insurance company, and may therefore be waived by the company. As stated by the New York court in Roeser v. Guardian Life Ins. Co., 162 Misc. 798, 296 N.Y.S. 585, 588, "Surely the company does not, by failing to deduct premiums not yet due, forfeit its right thereafter to collect them from the assured and to enforce the remedies allowed it by law for nonpayment of premiums."

Appellant's next point is "The provision in the policy and the loan agreement together constitute an acknowledgment of the receipt of the premium." It is here urged that the provision in the insurance policy to the effect that premiums to the end of the current insurance would be deducted constituted a recital of receipt of the premiums, and that it was therefore error for the trial court to admit evidence to the effect that the premiums had not been paid to the end of the insurance year. Reliance is had upon Section 484 of the Insurance Code of the State of California, St.Cal. 1935, p. 509, reading, "An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid."

Appellant builds up her case as follows:

The insured at the time each loan was made signed an "Assignment to Secure Loan", which read in part,

"The Travelers Insurance Company * * * having loaned to the undersigned the amount stated above, the latter hereby assigns to the Company, as sole security for said loan, the contract of life insurance * * *.

"*This loan is made subject to the provisions and conditions of said contract and in accordance with the terms thereof,* * * *". [Italics supplied.]

The argument is that the recital that the loan was made in accordance with the terms of the insurance policy was the equivalent of a recital that the terms of the insurance policy had all been carried out; that one of the terms of the policy was that premiums should be paid to the end of the insurance year; that this was therefore

the equivalent of a recital that insurance premiums had been so paid.

■ But appellant overlooks the language of the very statute on which she relies, that is, that the conclusive presumption comes into being only where the acknowledgment of the receipt of premiums is "in a policy". Even assuming that the recital in the "Assignment" that the loan was made in accordance with the terms of the policy can be regarded as a recital that premiums had been paid to the end of the insurance year, it does not fall within the terms of the statute relied upon. Section 1962, Subdivision 2, of the Code of Civil Procedure of the State of California provides that the presumption of truth of facts recited in a written instrument does not apply to the recital of a consideration. Appellant's assignments of error premised upon this so-called "conclusive presumption" therefore fail.

■ Appellant next argues that the judgment is contrary to and not supported by the evidence "in that there is no evidence that the insured expressly or by implication waived the provisions of the policy requiring the company to deduct the premiums due for the current insurance year". This assignment of error is built on the premise that the terms of the policy imposed a duty upon the company to deduct the entire year's premiums in advance from the proceeds of the loan, and that therefore in order to support the judgment of the District Court in favor of the insurance company, there must be found a waiver of the provision by the insured. But our holding above that the provision for the payment of premiums to the end of the current insurance year was for the benefit of the company and might be waived by the company destroys the appellant's first premise, and with this falls her entire arguments under this assignment of error.

It is next urged that any waiver on the part of the insured would be invalid on the ground of concealment by the company. The point is that the company should have explained to the insured the benefits of the provision of the policy requiring the deduction of premiums to the end of the current insurance year by pointing out that such deduction "would have resulted in keeping the policy in full force and effect until the end of the current insurance year at a net cost to the insured of only three and one-half per cent of the total amount borrowed."

■ In our opinion the facts do not warrant a holding that there was any concealment by the company of material facts—the evidence is clear that the insured knew that the deduction was not made. He knew that premiums were not paid to the end of the insurance year. Throughout the period of negotiations between the insured and the company in which the loans were being obtained, the insured procured loan after loan to pay premiums on the policies to keep them in effect. The terms of the policy are clear as to the rights of the parties in the event of nonpayment of premiums. Appellant's arguments here also fail.

Appellant's last point is "The judgment is contrary to and not supported by the evidence in that the evidence shows that at the time the policies were declared lapsed there was an available cash value sufficient to keep the policies in effect." Reliance is had upon the provisions of the policy relative to the cash and loan value thereof and relative to the rights of the parties in the event of nonpayment of premiums, which we have hereinbefore quoted. Appellant's argument is that since the terms of the policies were that the insured could borrow at any time during the year the value of the policies as of the end of the insurance year, the cash value of the policies as of the time the insurance company attempted to terminate them was $4,286 as to the first policy and $657 as to each of the other two policies irrespective of whether or not the premiums were paid to the end of the insurance year. It is conceded by the parties that the difference between the $4,286 and $4,126 as to the first policy and $657 and $609.40 as to the second and third policies, if applied to the purchase of term insurance, would have kept the policies in force until after death of the insured.

But appellant's entire argument under this point fails to consider another provision of each of the policies, reading, "If the premiums on this contract shall be paid other than annually, due allowance will be made in computing values for that portion of the insurance year for which premiums shall have been paid."

■ It is our opinion and we hold that this last-quoted provision should be interpreted to mean that the cash and loan value of the policies at any time during the insurance year is not always that as of the end of the insurance year, but that

where premiums are paid other than annually, it is to be adjusted in accordance with the period for which premiums have been paid.

In this connection the trial court found that on July 15, 1939 "the cash value of said policy (first policy) without deducting therefrom any loans made thereon, was the sum of $4,126.00 and that on said date the total amount of loans that had theretofore been made on said policy by defendant to the said Roscoe W. Griffin was the sum of $4,126.00". The court also found that on July 19, 1939, the cash value of each of the other two policies was the sum of $609.35. These findings are fully supported by the evidence.

Therefore judgment for the insurance company was proper under the provision of the policy quoted above to the effect that when the total indebtedness shall equal or exceed the cash value at the time of failure to repay any such loan or to pay interest when due, such failure shall terminate the policy upon proper notice. No question is made in the case as to the propriety of the notice given.

The judgment of the District Court is affirmed.